Matthias, J.
This case presents two questions for determination by the court:
1. Is a wife a competent witness and can she be compelled to testify against her husband under an indictment charging that he “did unlawfully assault * * # [his wife] with a dangerous weapon or instrument likely to produce great bodily harm,” where a personal injury to the wife resulted therefrom?
*63 2. Is the physician who treats a person who has suffered a wound inflicted by a deadly weapon permitted to testify as to the condition of the victim, in a criminal prosecution therefor?
At common law, there are certain exceptions to the general rule excluding a husband and wife from testifying for or against each other. In actions involving a personal injury of one committed by the other, the injured spouse is permitted to testify. This exception was said to be based on “necessity.” As a general rule, no outsider is present when a person injures his spouse. If the injured person were not permitted to testify, the law would be powerless to redress the wrong. The guilty party would be able to injure his spouse in the privacy of their home with complete immunity. An exception was therefore necessary in order to prevent injustice. 8 Wigmore, Evidence (1961), 242, Section 2239.
This court in Whipp v. State (1877), 34 Ohio St., 87, permitted a husband to testify against his wife. The wife had been indicted for assault with intent to kill her husband. The court recognized the general exclusionary rule but held that the husband was a competent witness since his wife had inflicted a personal injury on him.
The Whipp case was cited and approved in State v. Orth (1908), 79 Ohio St., 130.
The exception in case of personal injury by the husband or wife to the other was codified in Ohio. 86 Ohio Laws, 161 (1889). Section 2945.42, Eevised Code, authorizes a husband and wife to testify against each other in a prosecution for personal injury of either by the other. In the instant case, the husband was indicted for assault with a dangerous weapon. He allegedly struck his wife and stabbed her with a butcher knife. To hold that the wife is not a competent witness under such circumstances places a strained interpretation on the language of Section 2945.42, Eevised Code, and ignores its common-law background.
The injured spouse is permitted to testify in order that he or she will not be exposed to personal injury without having a remedy. However, where, as here, the facts constitute a crime, his or her right to testify also ensures that the public will not *64 suffer an offense without a remedy. The wrongdoer not only injures his spouse but he also injures the public, and it is for his offense against the public that he is subject to criminal prosecution. When the injured spouse is a witness for the state his competency cannot be affected by his desires or fears. He must testify to protect the public. Turner v. State (1882), 60 Miss., 351, 45 Am. Rep., 412.
The demand for the testimony of the injured spouse comes not from him alone but from the .community as a whole. Every member of the community has a duty to give whatever testimony he is capable of giving. The truth must be known, as far as possible, to enable the law to provide justice in each case. See 8 Wigmore, Evidence (1961), 70, Section 2192; and In re Story (1953), 159 Ohio St., 144, 148, 149.
In some instances, the law feels that another interest is sufficiently important to warrant an exception to this duty to give testimony. Thus, to promote marital peace there is a privilege not to disclose in court confidential communications between husband and wife. However, the basis for this privilege is lacking where a person is tried for assaulting his spouse.
“* * * it is an overgenerous assumption that the wife who has been beaten, poisoned or deserted is still on such terms of delicate good feeling with her spouse that her testimony must not be enforced lest the iridescent halo of peace be dispelled by the breath of disparaging testimony. And if there were, conceivably, any such peace, would it be a peace such as the law could desire to protect? Could it be any other peace than that which the tyrant secures for himself by oppression?” 8 Wigmore, Evidence (1961), 242, 243, Section 2239.
Under the circumstances involved in the instant case, the wife is competent and like any other witness can be compelled to testify. If she refuses she can be found in contempt and imprisoned until she agrees to testify. See Sections 2705.02 (C) and 2705.06, Revised Code.
No violation of the physician-patient privilege (Section 2317.02, Revised Code) occurred in allowing the physician who treated the victim to testify. The purpose of this privilege is to encourage patients to make a full disclosure of their symp *65 toms and condition to their physicians without fear that such matters will later become public. Against the interest of the patient in having his condition remain confidential, must be balanced the interest of the public in detecting crimes in order to protect society.
To accomplish this end, the General Assembly, in 1961, enacted Section 2917.44, Revised Code (129 Ohio Laws, 1034), which reads, in part, as follows:
“* * * any physician who shall treat, or be called upon to treat, any such wound [gunshot wound or wound inflicted by a deadly weapon] shall make a report setting forth a description of the wounded person, his name and address, if known, and a description of the nature and location of such wound.
“No person who makes a report in good faith with a view of complying with the requirements of this section shall, by reason thereof, have violated any confidential relationship * # * ??
It is, therefore, proper for the physician who treats a person wounded by a deadly weapon to testify in court as to the nature of the wound. The publicity against which the privilege is supposed to protect has already taken place. The details of the wound must have been reported by the physician to a law-enforcement officer. The only purpose that sustaining the privilege can now serve is to obstruct the course of justice.
The function of this court in reviewing a conviction is limited to the question of whether there was sufficient evidence to warrant the submission of the case to the jury and to support the verdict returned. State v. Sheppard (1956), 165 Ohio St., 293, paragraph five of the syllabus.
If there is evidence from which reasonable minds can reach different conclusions on the issue of whether the defendant is guilty beyond a reasonable doubt, the case should be submitted to the jury for its determination.
The record discloses the following testimony by a deputy sheriff:
“Q. Now, I will ask you again, Herman, isn’t it a fact that, under oath a few weeks ago, you said that Esther said to you that Pie had stabbed her?
*66 C l # # #
“A. * * * He was crying about it; said his wife accused him of cutting her on purpose. I will say that.
I 6 * # *
“Q. I will ask you whether or not this question wasn’t asked to you, Herman: ‘Was he definitely under the influence?’ Your answer: ‘Yes, he had too many. I’ve been on there for five years. This is the worst I’ve ever seen him.’ I will ask you whether or not you didn’t make that statement? A. Well, I’ll admit he was drinking some that night, but I never saw him drink any — I don’t believe I saw him drink any before that. He was a little that night.
“Q. I will ask you whether or not you didn’t say, under oath —didn’t say that under oath? A. Yes, I think I did.” (Emphasis added.)
Another deputy sheriff testified as follows:
“Q. I might refresh your recollection. I will ask you this: (Reading) ‘I said, Esther, what happened to you? She said, Oh, he stabbed me.’ [Admissible in the discretion of the trial court, under the exception to the hearsay rule for spontaneous exclamations, see Potter v. Baker, 162 Ohio St., 488.] Isn’t that what you said, Dale? If 1 said that it must be the truth.” (Emphasis added.)
Dr. Christman, who was called to treat Mrs. Antill’s wounds, testified as follows:
“Q. Did he [the defendant] make any statements to you while Esther was there or you and he when he came?
Í t # # *
“A. He stated he would not use a squad car [to send Mrs. Antill to a hospital] and he said he would see her fall off the chair and bleed to death without calling an ambulance.
<<# # *
“Q. I will ask you also, Doctor, whether or not it could have happened — that wound you examined — whether that could have happened by a person just walking, say, into a sharp instrument?
6 i • * #
“A. I would expect a person a recoil as quickly as possible. ’’ (Emphasis added.)
*67 Mrs. Antill testified as follows:
“Q. How did you receive that wound? A. Well, I was very much irritated at him and I pushed the chair toward him and he whirled around and he had a dish and Tmife in his hand, so l came against it.
“Q. Prior to the time that occurred, did anything else happen there? A. Nothing only we had been arguing.
“Q. Was any part of your body touched before that? A. Yes. We had got into a scrap before that.
“Q. And what part of your body was bruised prior to the time of the knife wound? A. My left breast.
“Q. What caused that? A. He grabbed me when I started at him.
t i # # #
“Q. What type of instrument was it that you received a wound from? A. It was a butcher knife.
< 4 # * #
“Q. Now, I ask you this, Esther, whether this question wasn’t asked you: ‘He just picked up the butcher knife and stabbed you with it?’ And your answer was: ‘Yes.’ A. Yes, he picked up the butcher knife. I had the mark.” (Emphasis added.)
The jury is the sole judge of the weight of the evidence and the credibility of witnesses. It may believe or disbelieve any witness or accept part of what a witness says and reject the rest. In reaching its verdict, the jury should consider the demeanor of the witness and the manner in which he testifies, his connection or relationship with the prosecution or the defendant, and his interest, if any, in the outcome. The jury may also consider the failure of the defendant to take the stand in his own behalf.
We, therefore, find that there was sufficient evidence in this cause to warrant its submission to the jury and to support the verdict rendered.

Judgment affirmed.

Tart, C. J., Zimmerman and O’Neill, JJ., concur.
Gibson, J., concurs in paragraphs one, two, four and five of the syllabus.
Brown and Herbert, JJ., dissent.
*68 Brown, J., of the Fourth Appellate District, sitting by-designation in the place and stead of Griffith, J.